(No. 29781.— )
THOMAS L. GEIGER, Appellant, *vs.* GLENN GEER *et al.,*
Appellees.

*Opinion filed November 20, 1946.*

ROBERT W. BEESE, of Sterling, and FREMONT M. KAUF-
MAN, of LaSalle, for appellant.

JOHN P. DEVINE, JOHN M. BUCKLEY, JOHN DIXON,
guardian *ad litem,* and GEORGE NICHOLS, trustee of unborn
appellees, all of Dixon, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree of the circuit court of Lee county construed
the second section of the last will and testament of John L.
Geiger, deceased. From that decree, his son, Thomas L.
Geiger, prosecutes this appeal, a freehold being necessarily
involved.

John L. Geiger, a resident of the town of Nelson, in Lee county, died testate on August 31, 1908, leaving surviving as his only heirs-at-law his widow, Anna L. Geiger, and their three children, Nellie Geer, Thomas L. and Walter W. Geiger. The testator's estate consisted of considerable real estate as well as a substantial amount of personal property. Thomas Geiger contested the will on the ground of mental incapacity. Upon appeal from a decree rendered upon a verdict adverse to him, the decree was reversed and the cause remanded for a new trial. (*Geiger* v. *Geiger*, 247 Ill. 629.) Upon the remandment, the widow and the other two children joined with Thomas Geiger as contestants. The second trial resulted in a verdict finding that the decedent was of unsound mind at the time of the execution of the supposed will and a decree was entered setting aside its probate. Upon an appeal prosecuted by the executor, this court reversed the decree as being manifestly against the weight of the evidence and remanded the cause. (*Geiger* v. *Bardwell* 255 Ill. 320.) The estate has been fully administered, and the property described in the second section of Geiger's will turned over to a trustee and, in turn, to successor trustees. By section 2 of the will, Geiger devised 325 acres of farm lands in the town of Nelson to A. C. Bardwell, as trustee, for the uses and purposes described, namely, to lease the property under such terms as the trustee may deem for the best interests of the beneficiaries, to keep the land so leased during the entire period of the trust, and to pay over the net proceeds, as often as practicable, in the manner and on the following conditions: "Unto my son Walter W. Geiger the net income of the south-east quarter of the north-west quarter, the east half of the south-west quarter and the north-west quarter of the south-east quarter of section 14; unto my son Thomas L. Geiger, and unto my daughter, Nellie Geer, each one-half of the net income of the remainder of my real estate [165 acres] situated in

said town of Nelson. To continue so to lease said real estate during the lifetime of my said children, respectively, deducting from the gross income all proper charges and expenses relating to the respective tracts for maintaining the respective premises and keeping them in a good state of preservation, and paying the taxes and keeping buildings insured, and re-building in case of destruction, together with reasonable compensation for his services, and any and all other proper charges in carrying out the trust, and to distribute the balance or net income as aforesaid: *Provided,* no part or share of said income shall be liable, while in the hands of the trustee,. to the creditors of either beneficiary, nor shall either have the power, in any manner whatever, directly or indirectly, to mortgage, pledge, sell, convey or in any way encumber or transfer his or her interests in said lands or in the proceeds or income thereof, but the share of each shall be paid directly by the trustee to the respective beneficiaries entitled thereto, and shall not be paid to any other person upon any written order or verbal order nor upon any pretended assignment or transfer thereof. On the death of my said son Walter such trust shall terminate as to the tracts from which he is to receive the net income as above, and the title thereto shall descend in remainder in accordance with the laws of descent then in force in this State. On the death of the first to die of the two remaining beneficiaries, said trust, as to an undivided one-half of the lands from which he or she is to derive net income, as aforesaid, shall terminate and the title to such undivided one-half shall descend in remainder in accordance with such laws of descent, and on the death of the last survivor the trust shall come to an end and the title to the remaining one-half shall descend in like manner." Reference to other provisions of the will is unnecessary.

Robert L. Bracken was appointed successor trustee on April 10, 1942. Walter Geiger died on January 30, 1921, leaving as his heirs-at-law his mother, Anna L. Geiger,

his sister, Nellie Geer, and his brother, Thomas L. Geiger. No question is presented with respect to the disposition of the tract devised in trust for the use of Walter Geiger. Anna L. Geiger, widow of John L. Geiger, died in 1932. Nellie Geer, a widow, died September 11, 1945, leaving as her sole heirs-at-law her two sons, Glenn and John Oren Geer. Glenn Geer has five daughters, two of whom are minors, and John Oren Geer has three children, all of whom are minors. Thomas L. Geiger, now about sixty-seven years of age, is separated, but not divorced, from his wife, Nettie F. Geiger. He has no children or descendants.

November 20, 1945, after his sister's death, the circuit court of Lee county granted the plaintiff, Thomas L. Geiger, leave to file a supplemental complaint for directions to the successor trustee, for construction of his father's will, and for other relief. Of the several defendants to the complaint only the following need be mentioned: Glenn and John Oren Geer, John Dixon, guardian *ad litem* for the five minor grandchildren of Nellie Geer, and George Nichols, the trustee of the interests of unborn defendants, namely, the future unborn child or children of Glenn Geer, John Oren Geer and Thomas L. Geiger. Separate answers were filed by Glenn and John Oren Geer, Nettie Geiger, the guardian *ad litem,* the trustee of the interests of unborn defendants, and the successor trustee under the will of John L. Geiger, deceased. Upon the issues made by the pleadings, a decree was entered on June 26, 1946. The chancellor found that doubt and uncertainty existed with respect to the proper interpretation of the second section of John L. Geiger's will concerning the powers, duties, rights and liabilities of the successor trustee; that, upon the death of Nellie Geer, the trust created for her benefit terminated and an undivided one-half interest in the farm land constituting the *corpus* of the trust became vested in Glenn and John Oren Geer, and that they are presently

seized in fee simple each of an undivided one-fourth interest in the property; that Thomas L. Geiger is seized of a life estate of the remaining one-half interest, subject to the provisions in the second section of his father's will, and that the ultimate takers of this remaining one-half of the trust will be the heirs-at-law of Thomas L. Geiger, determined as of the date of his death. The court found, further, that the best interest of the trust estate requires that the property be publicly sold and that, after the payment of all costs, liens and charges, an undivided one-half portion be retained by the trustee for the use and benefit of Thomas L. Geiger during the term of his natural life and, at his death, to descend to the persons designated by John L. Geiger's will, as construed in the decree, and the other one-half of the remaining proceeds to be divided equally between John Oren Geer and Glenn Geer. This appeal by Thomas L. Geiger followed. Glenn and John Oren Geer prosecuted a cross appeal from the part of the decree determining those ultimately taking title to the one-half interest directed to be held by the trustee for the benefit of Thomas L. Geiger.

Plaintiff contends that the legal title to all the real estate involved in this litigation vested, as of the date of his father's death, in Nellie Geer and himself, subject to their respective equitable life estates, and that the class of persons taking title to the property, subject to the life estates of his sister and himself, should be determined to be the heirs-at-law of John L. Geiger, deceased, as of the date of his death. According to the construction urged by plaintiff, the chancellor should have adjudged the interests in the real estate in controversy to be as follows: (a) Thomas L. Geiger, an undivided one-fourth interest in fee; (b) John Oren Geer and Glenn Geer, each an undivided one-eighth interest in fee, these three, Thomas L. Geiger, Glenn and John Oren Geer, being now the only living heirs-at-law of John L. Geiger as of the date of his death and, therefore,

entitled to distribution of the share of the trust estate set aside for Nellie Geer; (c) Bracken, the successor trustee under John L. Geiger's will, an undivided one-half interest for the life of Thomas L. Geiger upon the spendthrift trusts limited in the will and with the legal remainder to this undivided one-half part retained by the successor trustee in the following proportions: Thomas L. Geiger, an equitable life estate therein, as described; Thomas L. Geiger, an undivided one-half interest in fee, and John Oren and Glenn Geer, each an undivided one-eighth interest in fee, the fee interests of the two nephews being subject to his own equitable life estate.

Glenn Geer and John Oren Geer, the cross appellants, agree with the chancellor that the interest of their mother, Nellie Geer, in the trust estate is vested in them, not because, as the decree found, that they were her only heirs-at-law when she died in 1945, but, instead, for the reason that they are now the only heirs-at-law of their grandfather, exclusive of Thomas L. Geiger who, it is urged, takes no interest in the remainder because of the provision in the will limiting him to the net income from one half of the trust estate. Accordingly, they maintain that, upon his death, the remainder of the real estate from which he derives the net income for life will then go, under the Statute of Descent, to the heirs of the testator, John L. Geiger. The net effect of the contention of cross appellants is that they are now vested with an undivided one-half interest in the trust property and, when their uncle, Thomas Geiger, dies, if they survive him, the other one-half of the trust will vest in them.

The guardian *ad litem* and the trustee of unborn defendants, to support the decree, maintain that the classes of remaindermen should be determined as of the dates of the deaths of the beneficiaries of the trust; that the members of those classes are the heirs of the beneficiaries, and

that the remainders are contingent until the beneficiaries' deaths.

Nettie Geiger maintains, as the decree found, that the life estate of her estranged husband, Thomas L. Geiger, is subject to the provisions of his father's will, and that the ultimate takers of the title will be his heirs to be determined as of the date of his death. If she survives Geiger, and if the laws of descent remain unchanged, she will be one of his heirs-at-law, and, consequently, contends that, if she be then living, she will be entitled to have her rights, arising from the marital relationship existing with him, determined under the laws of the State in force and effect at the time he may die.

Plaintiff, Thomas L. Geiger, invokes the familiar rule that the law favors the vesting of estates at the earliest opportunity and that estates devised will vest upon the death of the testator unless a later time for their vesting is clearly apparent from the express provisions of the will or is necessarily implied therefrom. (*Jones* v. *Miller,* 283 Ill. 348.) The purpose of construing any will is to give it the meaning and interpretation which the testator intended, and his intention, ascertained from a consideration of the entire instrument, will be carried out whenever it can be done without violating some established rule of law or public policy. (*Glaser* v. *Chicago Title and Trust Co.* 393 Ill. 447.) Whether a remainder is vested or contingent in a given case depends not only upon the language employed in creating the remainder but, also, upon the intention of the testator, as disclosed from a consideration of the entire will. (*Riddle* v. *Killian,* 366 Ill. 294.) If the language used and the intention of the testator are clear that a contingent remainder was intended, the intention of its creator must control. (*Lachenmyer* v. *Gelbach,* 266 Ill. 11; *Brechbeller* v. *Wilson,* 228 Ill. 502.) A contingent remainder is a legal future interest after a particular estate of freehold limited upon an event (precedent in fact and

in form to its taking effect in possession) which may happen before or after, or at the time of or after, the termination of the preceding estate of freehold. (Kales on Estates and Future Interests, 2d ed. sec. 16.) A remainder limited to take effect either to dubious and uncertain persons or upon a dubious or uncertain event has frequently been adjudged a contingent remainder. (*Carter* v. *Lewis,* 364 Ill. 434; *Friedman* v. *Friedman,* 283 Ill. 383.) A common example of a contingent remainder is where, after a life estate, an interest is limited to individuals, or to a class, provided they survive the life tenant. (Kales on Estates and Future Interests, 2d ed. sec. 309; *Riddle* v. *Killian,* 366 Ill. 294.) "It is the uncertainty of the right to take the property, and not the enjoyment of it, that distinguishes a contingent from a vested remainder." *Jones* v. *Miller,* 283 Ill. 348.

A consideration of the will of John L. Geiger discloses that his manifest intent, so far as the property covered by section 2 is concerned, was to assure a life estate to each of his three children in the property described, with a remainder to their heirs-at-law, as of the date of their respective deaths. The dominant desire of the testator reflected in this section of the will is to provide, at all events, a degree of income to his children, free from the claims of creditors, denying the beneficiaries the power, directly or indirectly, to mortgage, pledge, sell, convey or, in any manner, encumber or transfer his or her interests in the property or in the proceeds or income therefrom. This intent he expressed in appropriate language, creating spendthrift trusts for each of his children. Upon the appeal in the will contest case, this court observed, (*Geiger* v. *Bardwell,* 255 Ill. 320,): "The will itself * * * does indicate that the testator believed his children should not have the direct control of his estate. The trust he attempted to create was within his legal power, and the fact that all the beneficiaries for whose protection it was created wish it de-

stroyed does not make it any the less the duty of the trustee and the court to see that the will of the testator is carried out if he was mentally competent." Indubitably, the testator intended to and did create a spendthrift trust. In. *O'Hare* v. *Johnston*, 273 Ill. 458, this court said: "A spendthrift trust is created with a view of providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity. Directions against alienation by the voluntary act of the beneficiary or through legal process by creditors are the usual incidents of such trusts."

Recourse to the second section of the will discloses that the testator restricted the connection of his three children with the trust property to the acceptance of their respective shares of the income from the trustee by specifically providing that the income from their shares "shall not be paid to any other person upon any written order or verbal order nor upon any printed assignment or transfer thereof." Furthermore, as recounted, he effectively prohibited any one of the three beneficiaries from mortgaging, pledging, selling, conveying, or in any way encumbering or transferring his or her interests in the property. Intent to withhold title to the trust property, or to the proceeds by way of principal resulting from the sale of such property, could hardly be more clearly stated. To hold that the trust property, or the proceeds resulting from its sale, belonged to the three children, or should become subject to their control, would do violence to their father's plan for protecting them, even against their own disposition. Plaintiff's contention that the second section of his father's will created vested remainders in his three children is untenable.

The next question relates to the identity of the contingent remaindermen, first, to the share of the trust estate devised for the benefit of Nellie Geer, and secondly, to Thomas L. Geiger's share. In ascertaining the testator's intent, we refer to the testator's disposition of the share

of his son Walter, upon the latter's death. The language employed is clear that, upon Walter's death, the trust shall terminate as to him, and that the title to the tracts of land from which he had been receiving the net income "shall descend in remainder in accordance with the laws of descent then in force in this State." Although no question is presented upon this appeal concerning the disposition of Walter Geiger's share of the trust property, the provision made for him must be considered in determining the intention of the testator with respect to the disposition of Nellie Geer's share upon her death and, eventually, of Thomas L. Geiger's share upon his future demise. Immediately following the provision with respect to Walter Geiger's share, section 2 of the will provides that, on the death of the first of Nellie Geer and Thomas Geiger to die, the trust, as to an undivided one-half of the lands from which he or she has been deriving net income, shall terminate, and the title thereto "shall descend in remainder in accordance with such laws of descent." The use of the word "descend" is not technically accurate, but the intent of the testator is, nevertheless, manifest that his property shall pass conformably to his will, and the word was employed for the purpose of directing the course it should take. "Such laws of descent" obviously refer to "the laws of descent then in force in this State" in the preceding sentence in connection with the determination of those entitled to take Walter Geiger's share upon his death. Repetition of the words "then in force in this State" was unnecessary. The next and last sentence of section 2 then concludes that, on the death of the last survivor,—as it happens, Thomas L. Geiger,—the trust shall come to an end and the title to the remaining one-half "shall descend in like manner." The words last quoted refer to "such laws of descent" and these words, in turn, refer to "the laws of descent then in force in this State." The only valid reason for providing that the law of descent in force at the time of distribu-

tion rather than the law in effect at the time of the testator's death should apply was to direct that the members of the class taking the remainder should be determined at the later time. With unmistakable clarity, the testator provided that, upon his daughter's death, her one-half portion of the trust estate should "descend in remainder," in accordance with the laws of descent then in force in Illinois. In short, Nellie Geer's share goes to her heirs-at-law as of the day of her death in the same manner as Walter Geiger's share went to those persons who were his heirs-at-law on the day he died. Under the Statute of Descent in force in 1945 (Ill. Rev. Stat. 1945, chap. 3, par. 162,) at the time Nellie Geer died, her only heirs-at-law were her two sons, and they were, accordingly, entitled to an undivided one-half each of the share of the trust estate set aside for their mother during her lifetime.

Plaintiff places reliance upon cases (*Henkins* v. *Henkins,* 287 Ill. 62; *People* v. *Camp,* 286 Ill. 511; *Kellett* v. *Shepard,* 139 Ill. 433; *Rawson* v. *Rawson,* 52 Ill. 62,) holding that, upon the particular factual situations presented, "heirs-at-law" refer to those who are heirs at the time of the testator's death. It has frequently been stated that decisions in previous cases are not of controlling importance for the reason that each will-construction case has an individuality of its own, since even the same words, when used under different circumstances and with different context, may express different intentions. (*Jackman* v. *Kasper,* 393 Ill. 496; *Cahill* v. *Michael,* 381 Ill. 395.) The authorities cited by plaintiff do not aid him. They establish the proposition that if the remaindermen are the heirs of the testator, they should be determined as of the date of his death, and then only in the absence of a different intention in the will on the part of the testator. The problem is not presented in those cases, as here, of identifying the person whose heirs are to take the remainders. One of the decisive issues before us is whether the heirs of the

testator or the heirs of his children were intended to take the remainders. In the present case, the date of the death of each of the three named beneficiaries determines who constitute the respective classes of remaindermen who succeed to the interests of the beneficiaries. (*Dime Savings and Trust Co.* v. *Watson,* 254 Ill. 419; *Schuknecht* v. *Schultz,* 212 Ill. 43.) Although the will does not specifically direct that the remaindermen are to be the heirs of the beneficiaries of the trust, the intention of the testator is, nevertheless, manifest in this regard when he provided that the property should "descend" in accordance with the laws of descent in effect at the time of the death of each beneficiary. This conclusion is fortified by the provision for a remainder instead of a reversion.

Plaintiff contends, further, that the testator's language in section 2 of his will declaring that "the title * * * shall descend in remainder in accordance with the laws of descent" creates the same result as though the remainders had passed as intestate property. Reliance is placed upon *Tilton* v. *Tilton,* 382 Ill. 426. The rule in the *Tilton case* to the effect that an heir-at-law cannot be disinherited merely by a declaration that he shall not have anything in addition to specifically described property or money given him in a will is inapplicable here. No question of intestacy is involved in this case. The language of John L. Geiger's will clearly expresses his intent that no one of his children should, at any time, control, or own absolutely, the property constituting any part of the *corpus* of the trust. This, he had a right to do, and his intent must be effectuated.

Plaintiff contends, further, that the words "shall descend" and "then," employed in the next to the last sentence of section 2 of the will, do not indicate the time of the ascertainment of the heirs-at-law but refer merely to the event upon the happening of which the heirs take possession of the property. The words "in accordance with

such laws of descent," used in connection with the trust property set aside for Nellie Geer and Thomas L. Geiger, obviously relate back to the words of limitation pertaining to Walter Geiger, "in accordance with the laws of descent then in force in this State." The conclusion follows, necessarily, that the same limitation was intended to, and should, apply to Nellie and Thomas L. Geiger. The word "then" has many meanings, dependent upon the context in which it appears. It may refer to specific time, or merely next in order of time. Here, it was employed as an adverb of time. The testator, in this case, has expressly stated that the manner of distribution, as well as the event of vesting, should await the termination of the respective life estates. To hold that "the laws of descent then in force" refer to the laws of descent in force in 1908 when John L. Geiger died rather than those in effect on the deaths of his three children would distort and place a tortuous construction upon the far-seeing plan, carefully devised and clearly stated by the testator.

Plaintiff urges that a devise of a life estate to named persons who are also some of the heirs-at-law, with remainder over to his heirs-at-law, does not limit the heirs to a life estate. It is true, of course, that a life tenant may also be a remainderman. Where, however, a contrary intention on the part of the testator is apparent, the intention controls.

To sustain their contention that they are entitled to the share of their mother, Nellie E. Geer, because they are the only heirs-at-law of the next generation, Glenn and John Oren Geer insist that the obvious general intention of the testator was to provide that the title to the trust property should never pass to any one of his three children but, instead, to those persons who would have been his heirs-at-law in 1908 had no one of his three children survived him. They point out that they were the only grandchildren of John L. Geiger when he executed his will; that an assumption ob-

tained his two sons might marry and have children, and that he, the testator, could, therefore, make no more equitable disposition of his estate subsequent to the death of his children than to provide it should descend according to the Statute of Descent in force at the time the respective life interests should terminate. This statement by Glenn and John Oren Geer is correct, but they misconstrue the will when they insist that the respective remainders "descend" solely to blood relatives of their grandfather, whoever they may be, upon the termination of the respective life estates. The fact situations in *Black* v. *Jones*, 264 Ill. 548, and *Wallace* v. *Foxwell*, 250 Ill. 616, are far from parallel with the facts in the case at bar. The practical effect of the argument advanced is that the wife of Thomas L. Geiger, if she survives him, would not be entitled to a share of the remaining portion of the trust estate as one of his heirs-at-law under such Statute of Descent as may then be in force in Illinois. The statement of the contention that the remainders descend only to the "blood heirs" of John L. Geiger carries its own condemnation. It suffices to observe that, as the law now stands, Nettie Geiger will be one of Thomas L. Geiger's heirs-at-law, provided that she survives him, is still married to him, and the Statute of Descent remains unchanged. Despite the age of Thomas L. Geiger, a prophesy as to who his heirs-at-law will be upon his eventual death would be sheer speculation in which we decline to indulge.

The decree, however, should provide that the distribution at the death of Thomas L. Geiger should be as real estate and not as personal property.

The decree of the circuit court of Lee county is reversed and the cause remanded, with directions to modify the decree as above indicated.

*Reversed and remanded, with directions.*