K. CAVETT, and The First National Bank and Trust Company of Oklahoma City, Oklahoma, A National Banking Association, as Trustees of the W.T. Hales Estate Trust, Appellees,

v.

Viva Oneta PETERSON, Hattie Belle Mullaly, William T. Hales, Jr., George A. Hales, Joe C. Campbell, Administrator of the Estate of Lucile Constance Campbell, deceased, Oneta Hales, T.J. Hales, W.F. Peterson, Jr., Oneta Childers, Carter Mullaly, Jr., Marylin Mullaly, Taylor Hales Mullaly, W.T. Hales, III, Garvene Hales, Marcia L. Hales, Allen H. Buck and Joseph C. Campbell, Jr., Minors, the First National Bank and Trust Company of Oklahoma City, Oklahoma, A National Banking Association, and K. Cavett, William T. Hales, Jr., and George A. Hales, as Trustees of the Hales Building and Investment Company, a Dissolved Oklahoma Corporation, Appellants.

Nos. 50962, 50961.

Supreme Court of Oklahoma.

Sept. 18, 1984.

Granville Tomerlin (court-appointed trustee), Tomerlin & High, Oklahoma City, for appellants: Unknown and Unborn issue of W.T. Hales, who are or may be his Great Grandchildren, and as Guardian ad litem for Megan Mullaly, Ava Ericksen a/k/a Ava Erickson, Anga Ericksen a/k/a Anga Erickson, Hattie Belle Mullaly, Stein Ericksen a/k/a Stein Erickson; Unborn Issue of Allen Hales Buck, Jr., and Damien Buck a/k/a Damien C. Buck, Minors.

John H. Kennedy, Oklahoma City, for appellants: Joseph C. Campbell, Jr., Marcia Hales Radley, Kevin A. Moore, Keith H. Moore, and Christopher Moore; and John C. Moran, Court appointed trustee for the unknown and unborn issue of Kevin A. Moore, Keith H. Moore, Michael H. Moore, Christopher E. Moore, Scott C. Campbell, James P. Campbell, and Brian W. Campbell; and John C. Moran, as a Court appointed guardian and litem for Michael H. Moore, and William Campbell.

Spradling, Stagner, Alpern, Friot & Jones, Oklahoma City, for appellants: Allen Hales Buck, Jr. and Damien C. Buck.

Hastie & Kirschner, By Michael Paul Kirschner, and John W. Swinford, Jr., Oklahoma City, for appellees: The First National Bank and Trust Company of Oklahoma City and Ward Edinger, Co-Trustees of W.T. Hales Estate Trust.

Robert A. Reece, Patrick M. Ryan, Michael M. Stewart, Cynda C. Ottaway, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, and John A. Green, of Green & Brown, Inc., Oklahoma City, for appellees: Bill Peterson, Executor of the Estate of Viva Oneta Peterson, Deceased; Oneta Peterson Cadenhead, William F. Peterson, III, Rebecca Ann Peterson Smith, Linda McGavran, Viva Young, John Cadenhead, Kim Brown Lewis, Paul Marble, and W.T. Hales, Jr.

HARGRAVE, Justice.

This appeal arises from a Journal Entry of February 24, 1977, as corrected by a nunc pro tunc order of April 7 of that year, concerning a third amended petition to construe the trust of the late W.T. Hales filed by Ward Edinger and the First National Bank and Trust Company, Trustees. This petition pled the trust was required to hold certain property until the demise of the last surviving child of Mr. Hales, specifically the Hales Building. The trustees pled that an expenditure of $12,500.00 was incurred in 1975 as costs of repair of the air conditioning system and the trustees sought instructions under 60 O.S. § 175.23(A) as to whether that expenditure was accountable to the corpus or income of the trust. Similarly, the trustees sought instruction as to the allocation of attorney fees. The petition sought approval of an accounting of receipts and disbursements made since 1959, and sought relief from provisions of the trust instrument restricting the investment of funds of the trust to the same class of securities which the State School Land Commission is authorized to invest in and first mortgages on improved realty for no more than 50% of appraised value, in addition to U.S. Government lands or municipal securities. The trustees also sought instruction as to the trustees' ability to accept $1,075,000 appraisal of the Condemnation Commissioners for the Hales Building, and whether that fund would comprise corpus or income of the trust. Lastly, the trustees sought an order appointing counsel for the unknown and unborn heirs of Allen Hales Buck, Jr., who could not be located with due diligence.

Mr. W.T. Hales passed from this life in 1938. His last will and testament initially provided for the payment of certain specific bequests and passed the residue of his estate to a testamentary trust. This trust was intended primarily to benefit the children of W.T. Hales, with four disbursements of the trust corpus at five-year intervals, and yearly and monthly payments of the trust income. Expressly excluded from the five-year corpus distributions were two parcels of real property known as the Ha-

les Building and the Forum Building. Trust corpus was to be distributed at five-year intervals to the decedent's children, beginning with $1/20$ of the corpus, this figure modified over five-year periods to $1/15$, $1/10$ and $1/5$ of the corpus, provided income payments were proportionately modified. (See Clause 6.) In addition, each of the children was to receive $500 per month as "Fixed Income Payments", enhanced if necessary by "Discretionary Income Payments" as well as "Remaining Income Payments" if there were any excess income for that year. However, yearly distribution of income was contingent on excess income at the year's end (Clause 5) after several classes of discretionary payments were considered by the trustees, including medical and educational benefits for decedent's grandchildren and others.

The testamentary document provided that should a child of the testator die before the twenty-year disbursement of trust principal was completed, that portion of the assets was to be set aside with the Hales Building and the income therefrom distributed to the remaining children for the life of the estate. One child, Lucile Constance Campbell, died prior to the first distribution of corpus and the co-trustees sought directions of the court as to the assets that would have been distributed to her. Upon the death of the last surviving child of W.T. Hales, the remaining principal of the trust is to be distributed to the grandchildren of W.T. Hales, then living, per capita, or if deceased, to the issue of any deceased grandchild, then living, per stirpes.

The corrected Journal Entry notes that the February 24 hearing was held to consider also six other matters: A motion to vacate filed by Allen Hales Buck, Jr., and an application by the same party; W.T. Hales, Jr.'s application to construe the Hales Estate Trust; the application for distribution of income filed by Viva Oneta Peterson; objections to the accounting of the co-trustees and a motion to surcharge the co-trustees, and a second objection. The Journal Entry notes all parties present and ready for trial and recites the respective

appearances, stating inquiry was made into the sufficiency of plaintiffs' search to determine the identity and address of the defendants served by publication, and approves that service.

The Journal Entry summarizes the provisions of the trust and notes the trust exists primarily for the benefit of W.T. Hales' children. See *Moore v. Cavett*, 368 P.2d 224 (Okla.1962). At five-year intervals the principal was to be distributed to the children then living, and if all children survived 20 years following the trustor's death, the entire trust would have been fully distributed, save for the Hales Building. After the demise of the last child, the remaining principal was to be distributed to the then living grandchildren or to the issue of their body *then living*. The Journal Entry continues, stating that the co-trustees instituted proceedings for construction and interpretation of certain provisions of the trust in 1942 and 1943, resulting in a journal entry of judgment dated September 29, 1943. With respect to this judgment, the court made seven findings. There was noted service on all living beneficiaries of the trust, vested and contingent, when the action was commenced in 1942, including W.F. Peterson, Jr., Oneta Childers, Carter Mullaly, Jr., Marylin Mullaly, Taylor Mullaly, W.T. Hales III, Garvene Hales, Marcia L. Hales, Allen H. Buck and Joseph C. Campbell, Jr. The attorney appointed guardian ad litem to represent the interest of the minor grandchildren was properly notified and did represent their interests in the 1943 proceeding. The interest of the grandchildren in the income distribution to children and retention of corpus in the trust was common to all grandchildren and more remote issue of W.T. Hales not a party to the 1943 proceeding. The adult grandchildren and guardian ad litem of minor grandchildren provided sufficient protection of the rights of grandchildren and more remote issue of W.T. Hales. The record contains no affirmative indication that the guardian and adult grandchildren acted in hostility to the interests of the grandchildren. The September 29, 1943 order of the District Court was not outside

the issues raised by the parties. Lastly, the court found under the facts of this case that the attorney for the Trustees of the Hales Building & Investment Corporation, two adult grandchildren, and the minor grandchildren as disclosed by the record did not represent conflicting interests.

The journal entry then delineates four findings with respect to the judgment of April 15, 1959, arising from construction and interpretation of the trust in respect to distribution of principal and income. First, appearances were made by all the living children of W.T. Hales and all living grandchildren of W.T. Hales save one, in addition to the living children of the only deceased grandchild. Secondly, the journal entry states the interests of the grandchildren and great grandchildren appearing in the distribution of income and retention of corpus were common to the interests of any grandchildren and remote issue in the proceedings resulting in the 1959 judgment. The journal entry also found the 1959 judgment to be within the issues tendered the court for decision and that the grandchildren and great grandchildren then party to the action provided sufficient protection of the rights of grandchildren or more remote issue of W.T. Hales, and the record did not affirmatively show that parties to the action acted in hostility to remote issue not party to the proceeding. Lastly, the court found in reference to 1975 income that the Trustees did not abuse their discretion in paying $12,290 from the trust income of 1975 for repairs to the Hales Building nor in choosing to distribute as a discretionary payment the sums of $8,971.78 to the guardian of Allen Hales Buck, Jr., and $2,400 to the guardian of Damien C. Buck out of the 1975 income of the trust. In reference to the 1976 trust income, the journal entry states the Co-Trustees did not abuse their discretion in deciding to pay the Co-Trustees counsel fees, nor in their decision to pay the guardian of Allen Hales Buck, Jr. $7200 and the guardian of Damien Buck $2400 under Clause 5, paragraph 9 of the trust instrument. The journal entry additionally states that under the

provisions of paragraph 8 of the fifth clause of the Hales trust, all 1976 income from the trust is to be paid in equal shares to the living children of W.T. Hales, at that time Viva Oneta Patterson and W.T. Hales, Jr. Further, the court concluded distributions made by the Trustees under paragraph 9 of the fifth clause are to be considered annually and discretionary payments made thereunder are to be made only for expenses incurred in the same year as the net income being distributed. The court additionally determined that the orders of September 29, 1943 and April 15, 1959, are valid, enforceable and res judicata to all parties to this proceeding. The final conclusion of law drawn from the journal entry is that the Co-Trustees have the authority in their discretionary power under the trust instrument to decide whether to accept or reject a Commissioner's condemnation award for the Hales Building or demand a jury trial on the issue.

The appellants in this cause are all either grandchildren or more remote issue of the late W.T. Hales. As filed, the present action encompasses two appeals, 50,961 and 50,962. Appellants present their independent briefs; their grouping and representation being noted under the appearances on this opinion. Adopting the nomenclature used by the parties to this appeal, they are referred to as the Tomerlin Appellants, Buck Appellants, and Campbell Appellants. The propositions of error set forth by these parties are categorized generally as impeaching the validity of prior orders and the correctness of the journal entry as it resolves the issues raised by the Co-Trustees' petition for construction of the trust.

■ The first issue revolves around the demonstration from the record that the remote orders issued in past years are void. Such a showing is required to avoid them since the time limits for attacking a voidable judgment found in 12 O.S. §§ 1031 and 1031.1 have long since expired.

■ The appellants attack the validity of the 1943 and 1959 orders and thus this appeal must reflect the results of prior appeals regarding the trust from the origi-

nal Oklahoma County District Court Cause # 105,961. Rulings made in these prior appeals are the law of the case. Once the court decides a question in a cause on appeal, that ruling governs in all subsequent proceedings. *State ex rel. Burk v. Okla. City*, 556 P.2d 591 (Okla.1976), *Berlands of Tulsa v. Northside Village Shopping Center, Inc.*, 447 P.2d 768 (Okla. 1968).

In *Moore v. Cavett, supra*, the trustees as plaintiffs sought instructions regarding certain property in downtown Oklahoma City. The four children actually receiving distributions from the estate joined them, seeking disposition of the property as prayed for. The defendants were grandchildren by a deceased child, known in the will as Lucile Constance Campbell. They were Marcia L. Moore, Joseph C. Campbell, Jr., and Allen Hales Buck. The trial court instructed the trustees as prayed for and denied defendants' motion for new trial. This Court upheld the trial court's determination that the defendants were not necessary parties to the action, thereby dismissing objections that summons was not issued nor process served on the defendants. Citing *Hurst v. Kravis*, 333 P.2d 314 (Okla. 1958), and 60 O.S. 1951 § 175.23(C), this Court held the relative positions of the parties in *Hurst* were almost identical with the parties in *Moore v. Cavett*. Thus the Court affirmed the designation of the defendants as contingent beneficiaries as found by the trial court, making that holding the law of the case.

Title 60 O.S. § 175.23(C) states:

"C. Actions hereunder may be brought by a trustee, beneficiary, or any person affected by the administration of the trust estate. If the action is predicated upon any act or obligation of any beneficiary, such beneficiary shall be a necessary party to the proceedings. The only necessary parties to such actions shall be those persons designated by name in the instrument creating the trust, and any persons who may be actually receiving distributions from the trust estate at the time the action is filed;

contingent beneficiaries designated as a class shall not be necessary parties."

Appellants here seek reversal of the trial court's order of April 7, 1977 upholding the validity of all prior orders of the Court, including those of September 29, 1943 and April 15, 1959, along with all other acts and accounts of the trustees from the institution of the trust to that hearing. The gravamen of appellants' complaint is that both the 1943 and 1959 judgments are void for lack of due process in providing proper notice and opportunity to be heard in a bona fide adversary proceeding where all parties interested in the trust were fairly and adequately represented. Having passed the statutory time limitations for attacking a voidable judgment, 12 O.S. 1971 § 1031, appellants must rely on 12 O.S. 1971 § 1038.

If *Moore v. Cavett* is to govern this appeal by virtue of the doctrine of the law of the case, appellants' chief complaint, *viz.* that they are bound by prior judgment devoid of the essentials of due process, must fall unless it can be shown that either the holding of *Moore v. Cavett* does not apply to this appeal or should be expressly overruled. Thus, appellants Allen Hales Buck, Jr. and Damien Buck urge that *Moore v. Cavett* is a decision relating to the administration of the trust and should be limited to actions for instructions about the administration of the Hales Trust. In distinction, the present appeal seeks to establish the legal rights and interests of vested and contingent remaindermen in the Hales Trust *vis a vis* the 1943 and 1959 judgments and thus is essentially different from the issues of *Moore v. Cavett.* The Tomerlin appellants squarely contend that *Moore v. Cavett* should be expressly overruled or alternatively that it has no bearing on this appeal.

This Court has addressed the question of the law of the case on many occasions. In *In the Matter of the Estate of Severns,* 650 P.2d 854 (Okl.1982), citing *Berland's, Inc. of Tulsa v. Northside Village Shopping Center, Inc.,* 447 P.2d 768 (Okl.1968), the Court declared that "[t]he decision of the appellate court on an issue of law becomes the law of the case once the decision is final and unreversed in *all* subsequent stages." *Id.* at 856. (Court's emphasis.) In *Severson v. Roberts,* 168 P.2d 615, 197 Okl. 121 (1946), this Court stated: "The decision on the first appeal is the 'law of the case' in all subsequent stages and will not ordinarily be reversed on second appeal, unless the former decision is palpably erroneous and the Court is satisfied that gross or manifest injustice has been done, or that the mischief to be cured far outweighs any injury that may be done by overruling the prior opinion."

█ It is the opinion of this Court that the prior decision is neither palpably erroneous nor has gross or manifest injustice been done by the prior ruling of this Court to the effect that under the terms of the seventh clause of the last will and testament of W.T. Hales, the grandchildren and more remote kin are contingent beneficiaries. The applicable clause states pertinent part:

"Upon the death of the last survivor of my children the whole of said trust estate remaining shall be distributed equally among the then living children of my five children, share and share alike, per capita and not per stirpes, provided, however, that if any of my said grandchildren shall have died leaving issue, the share which would have been distributable to such grandchild, if living, shall go to the issue of his or her body then living, per stirpes and not per capita...."

Similarly, this Court's prior ruling that 60 O.S. 175.23(C) is applicable to this proceeding, having been determined in *Moore v. Cavett, supra,* is presently binding on the parties to this appeal as the law of the case.

█ Appellants' contention that the prior actions taken by the trial court and this court on appeal invade constitutionally protected due process rights of the contingent beneficiaries must fail. That the testamentary trust explicitly states no rights

in the trust property vest *in praesenti* until distributed reinforces prior determinations that the grandchildren and more remote kin are contingent beneficiaries under the above-quoted clause of the trust instrument. Although the trial court has issued an order that requires, in this cause, notice to contingent beneficiaries at a time subsequent to the questioned 1943 and 1959 judgments, that process is not required under 60 O.S. 175.23(C) and is not required by the constitutional guarantee of due process. Therefore, it is unnecessary to discuss, for purposes of this appeal, the offered issue to the effect that the proceeding in this cause does not meet the standards necessary for virtual representation of unserved parties by persons and classes actually contesting the cause. Contingent interests are subject to legislative control. As noted in *Atchison v. Dietrich*, 315 P.2d 265 (Okl.1957), contingent interests in a trust do not constitute vested rights of such a character as to render unconstitutional the application to that trust of a statute declared to be applicable to trusts then existing. In *Atchison* the issue was not simply a determination of necessary parties to a trust construction suit by virtue of a later enacted trust act as here, but was a determination that the later passed act enabled the trustor to completely change the identity of a recipient of a contingent interest. In *Atchison*, the court quoted from *In MacMillan v. Branch Banking & Trust Co.*, 221 N.C. 352, 20 S.E.2d 276 (1942), to the effect that mere expectancy of future contingent interests do not constitute vested rights such as would deprive the Legislature of the power to enact the statute authorizing revocation of a voluntary grant. This Court thus determines that it is within the power of the Legislature to define necessary parties to a trust construction action in the manner that was done in 60 O.S. 175.23(C). Therefore, the 1943 and 1959 judgments are not void for failure to serve all contingent beneficiaries and appellants' attempt to avoid those judgments are futile.

■ Substantial portions of the briefs of the Tomerlin and Buck Appellants are devoted to outlining conflicts of interest in the representation of the parties in prior proceedings. While it appears that these actions are unusual, no appellant has presented authority which demonstrates that those relationships render judgments issued in 1943 and 1959 void so as to invalidate them at this late date.

The appellants contend also the trial court erred in approving payment to the children of W.T. Hales of income. The testamentary trust provided for distribution of one-fourth of the trust corpus every five years. It is alleged that the provisions of the instrument required a proportionate reduction in the income payments during this time. Additionally, it is alleged that under the terms of the instrument, income payments were to cease in 1959 at the time of the last corpus distribution. The sixth clause of the trust instrument states in the last proviso as follows:

"...and provided further that after each payment and distribution to any child the payments from income thereafter made to said children or to his or her descendants shall be proportionately decreased."

It is alleged that the proportionate reduction in income payments require a reduction from 100% to 75% after the first corpus distribution and to 50% after the second, then to 25% after the third, and finally to zero after the last corpus distribution. Such construction would require all income to be held to the death of the last child and the termination of the trust. This argument ignores the eighth paragraph of the fifth clause, which reads as follows:

"If at the end of *any* year there remains net income from said trust estate for such year in excess of the payments therefrom above provided for and of those payments, if any, provided for in paragraphs (9) and (10) next below then I will and direct that such *remaining* net income be *immediately* paid and distributed to my children then living, share and share alike."

■ The testator thus clearly intended that income payments be reduced so as not

to encroach upon the trust corpus, if income were not sufficient to meet the fixed income payments, but it is likewise clear that income was to be paid out to the children each year and not held to the termination date of the trust. Certainly it cannot be said that the approval of the payments so made is clearly in conflict with the provisions of the testamentary trust instrument itself. This Court will not interfere with trial court's construction of a will unless it is clearly against the weight of the evidence. *Savage v. Hill,* 346 P.2d 323 (Okla.1959).

Several other matters are alleged to be error. Of these a majority are presented simply as argument, unsupported by citations of error, and as such they will not be considered by this Court on appeal. *Irwin v. Irwin,* 416 P.2d 853 (Okla.1966). Other allegations of error are raised for the first time on appeal and likewise will not be considered in appeal. *Vickers v. Horster,* 451 P.2d 7, (Okla.1969). Another error is alleged by virtue of the fact that no pre-trial conference was held in this matter. The conference was cancelled because the attorney now alleging that fact to be error stated he had not sufficient time to prepare therefor and thus error, if any there be, was invited. Also, Rule 5 of the Rules for District Courts, 12 O.S. Ch. 2, App. states: "...A Judge may hold more than one pre-trial conference in any case or he may omit an action from the pre-trial docket."

The voluminous briefs of the parties have been considered in toto by the Court, and it appears after due consideration that the trial court carefully undertook and correctly decided the issues presented. The Journal Entry is free of reversible error and the trial court's ruling thereon is accordingly affirmed. The cause is remanded to the District Court for further proceedings.

AFFIRMED AND REMANDED.

SIMMS, V.C.J., HODGES, LAVENDER, DOOLIN and WILSON, JJ., YOUNG and WILSON, Sp. JJ., concur.

OPALA, J., concurs in part and dissents in part.

BARNES, C.J., and KAUGER, J., disqualified.