In re Kathleen GILROY, Debtor.

Jonathan D. Yellin, Chapter
7 Trustee, Plaintiff,

v.

Kathleen Gilroy, Individually and as
Trustee of the Michael S. Gilroy
Revocable Trust, Defendant.

Bankruptcy No. 96–13120–CJK.
Adversary No. 97–1700.

United States Bankruptcy Court,
D. Massachusetts.

July 1, 1999.

Mary DeNevi, Boston, MA, for Debtor.

Jonathan D. Yellin, Boston, MA, Chapter 7 Trustee.

## MEMORANDUM OF DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

CAROL J. KENNER, Bankruptcy Judge.

By his complaint in this adversary proceeding, the Chapter 7 Trustee, Jonathan Yellin, seeks a declaration that the Debtor's beneficial interest in an Illinois spendthrift trust is an asset of her bankruptcy estate. He argues that the Trust is not a valid spendthrift because the Trust gives the Debtor, as its trustee, discretion over distribution of the trust corpus, and because it gives her, as beneficiary, a general power of appointment over her share of the trust asset. On the strength of several arguments, including that the trust is a true spendthrift, the Debtor responds that her interest in the trust is excluded from the estate. The adversary proceeding is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court concludes that the Trustee is entitled to judgment as a matter of law.

## FACTS

The parties have submitted their motions on an agreed statement of facts, and both rely entirely on the facts set forth therein. Neither contends that there is a genuine issue of material fact, and I find that there are none. The agreed facts are as follows.

The Debtor is Kathleen Gilroy. In 1988, her father, Michael S. Gilroy, won a $2 million jackpot in the Illinois lottery. The proceeds are distributed over twenty years in annual payments of approximately $100,000 before taxes. On April 22, 1996, Mr. Gilroy, a resident of Illinois, executed his will and a trust agreement establishing the Michael S. Gilroy Revocable Trust (the "Trust"). Four days later, on April 26, 1997, Kathleen Gilroy filed a voluntary petition under Chapter 7 of the Bankruptcy Code, thereby commencing this bankruptcy case. At the time of her filing, she held a beneficial interest in the Trust. Michael Gilroy died on April 29, 1996, four days after the Debtor filed her bankruptcy petition. The primary asset of his probate estate was his interest in the proceeds of the winning lottery ticket; at the time of his death, eleven payments, totaling approximately $1.1 million, remained to be distributed. By operation of a pour-over clause in the will, Mr. Gilroy's interest in the ticket proceeds passed to the Trust and, pursuant to the Trust, is to be distributed among four subtrusts (created by the same trust agreement), including one of

which the Debtor is the sole beneficiary. From the remaining payments on the winning ticket, the total payable to the Debtor's subtrust, before taxes and expenses, is approximately $230,000.

The Trust Agreement Establishing the Michael S. Gilroy Revocable Trust has been placed in evidence as part of the agreed statement of facts. The Trust Agreement includes both a spendthrift clause and a general power of appointment. First, at ¶ 5.2, the Trust Agreement gives the beneficiaries of the subtrusts (known as "descendants' trusts") a general power of appointment:

> 5.2 *General Power of Appointment.* After the beneficiary of a descendant's trust shall have attained the age of twenty-one (21) years, said beneficiary shall have the right, at any time and from time to time during her lifetime and upon her death, to appoint all or any part of the trust estate of such trust to or for the benefit of any one or more persons or entities (including herself).[1]

Later, at ¶ 10.5, the Trust Agreement contains the following spendthrift provision:

> 10.5 *Spendthrift Provision.* In keeping with the nature of this Trust, no beneficiary or any other person except as specifically provided in the Agreement shall have any ascertainable, proportionate, actuarial or otherwise fixed or definable right to or interest in all or any portion of the trust estate. No income or principal distributable or to become distributable with respect to a separate trust shall be transferable, assignable, or subject to being in any manner whatsoever anticipated, charge or encumbered by any person beneficially interested in such separate trust, or subject to interference or control by

any creditors of said person, to any claim by any Federal, state or local government or department or office thereof for reimbursement for medical, disability or other payments provided to said person by such governmental entity, or subject to any claim for alimony, or for the support of a spouse pursuant to a decree of divorce or separate maintenance of a separation agreement, or to being taken or reached by any legal or equitable process in satisfaction of any debt, liability or obligation of said person prior to its receipt by said person; *provided, that the provisions of this Section shall not prevent the exercise of, or transfer pursuant to the exercise of, any power of appointment granted hereunder.*

Trust Agreement, ¶ 10.5 (emphasis added). Finally, in ¶ 12.8, the Trust Agreement states that "[t]his agreement shall be construed and administered and the validity of each separate trust created hereunder shall be determined in accordance with the laws of the State of Illinois."

## ISSUES AND ARGUMENTS

These simple facts raise a small tangle of issues. The starting point is § 541(a)(1) of the Bankruptcy Code. The Trustee argues that, because the Debtor held a beneficial interest in the Trust on the date of the bankruptcy filing, her interest in the Trust became an asset of the bankruptcy estate by operation of § 541(a)(1). The Debtor responds that her interest in the Trust was excluded from the estate by operation of § 541(c)(2) because the Trust includes a restriction on the transfer of her beneficial interest—to wit, the spendthrift clause—that is valid and enforceable under Illinois law. The Trustee responds that

---

1. The record is devoid of any indication of the Debtor's date of birth. For purposes of this motion, I feel it safe to assume that the Debtor had reached the age of 21 years by the date on which she filed her bankruptcy petition, or at least within 180 days thereafter. I make this assumption (1) because her schedule of unsecured debts reflects a business record that would be highly unusual for a person of less than twenty-one years, and (2) because the Debtor is represented by able counsel who, if it had been the case, would surely have adduced evidence that the Debtor was not old enough to exercise her general power of attorney within the relevant period.

the subtrust is not a true spendthrift trust because the Debtor is both sole trustee and sole beneficiary, and because the Trust gives her, as beneficiary, a general power of appointment over the subtrust assets, which power is specifically excepted from the spendthrift provision. The Debtor answers that this argument is unavailing because (1) the Trust imposes severe limitations on her discretion as trustee; (2) in any case, she did not become trustee of the Trust until after she commenced this case; (3) under Illinois law, the Debtor can disclaim her power of appointment, and her disclaimer would relate back to the date of the Trust's creation; and (4) under Illinois law, a creditor cannot compel the exercise of a power of appointment.

In the alternative, the Debtor argues that, if her beneficial interest in the subtrust is not excluded from the bankruptcy estate, the estate nonetheless acquired only the value of the property in trust on the date of the bankruptcy filing; the estate does not include any enhancement in value that occurred postpetition, by virtue of the Trust's postpetition inheritance of her father's right to the lottery proceeds. In response, the Trustee contends that the debtor's right to the lottery proceeds is included in the estate by operation of § 541(a)(5)(A), which brings into the estate those interests in property that the Debtor acquires, or becomes entitled to acquire, within 180 days after the bankruptcy filing by bequest, devise, or inheritance.

## DISCUSSION

As a preliminary matter, I agree with the parties that there are no genuine issues of material fact, leaving only the issues of law that are outlined above.

### a. Section 541(c)(2)

The first issue of law is whether, by virtue of § 541(c)(2) of the Bankruptcy Code, the spendthrift provision of the Trust Agreement puts the Debtor's beneficial interest beyond the reach of the Trustee, standing in the shoes of the Debtor's creditors, and thereby excludes it from her estate. Section 541(a)(1) does not use the word "transfer," but, in essence, it states that the filing of a bankruptcy petition effectuates a transfer from the Debtor to the bankruptcy estate.

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(c)(2). "Except as provided in [§ 541(c)(2)]," § 541(a)(1) would bring into the estate "all legal or equitable interests of the debtor in property as of the commencement of the case," including the Debtor's equitable interest in the Trust. 11 U.S.C. § 541(a)(1). This is not contested.

Section 541(c)(2) is an exception to § 541(a)(1)'s general rule of inclusion, operating to block the transfer from debtors to estates of debtors' beneficial interests in certain trusts. Specifically, it provides that "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Because it is an exception to the general rule, a debtor invoking subsection (c)(2) bears the burden of establishing that it applies. To do so in this case, the Debtor must establish that the Trust contains a restriction on the transfer of her beneficial interest and that the restriction is enforceable under applicable nonbankruptcy law—in this case, the parties agree, the law of Illinois. If she carries this burden, then, as subsection (c)(2) states, the restriction is enforceable in the bankruptcy case.

In this case, the Trust contains a *limited* restriction on the transfer of the Debtor's beneficial interest. Specifically, the spend-

thrift provision prohibits involuntary transfer by the Debtor's creditors and voluntary transfer by the Debtor herself. However, by its final proviso, it expressly does not affect the Debtor's authority to exercise the general power of appointment that the Trust gives her over its assets.

■ Does this proviso render the spendthrift provision unenforceable under Illinois law? The Court must answer this question as it believes the highest court of Illinois would answer it. *In re Miller,* 113 B.R. 98, 101 (Bankr.D.Mass.1990) (a bankruptcy court ruling on an issue of state law must rule as it believes the highest court of the state would rule). Illinois law on the matter of spendthrift trusts is governed by common law, *In re Groves,* 120 B.R. 956, 960 (Bankr.N.D.Ill.1990). The Supreme Court of Illinois has long adhered to the doctrine that "the creator of a trust may secure the enjoyment of it to the objects of his bounty by providing it shall not be alienable by them or become subject to be taken by the creditors, and that such intention expressed in his will will be carried out." *Congress Hotel Co. v. Martin,* 312 Ill. 318, 320, 143 N.E. 838, 839 (1924), and cases cited therein. Likewise, in *Hopkinson v. Swaim,* the court stated: "Trusts whereby the income from property, real or personal, may be required to be paid to a beneficiary, but shall be beyond his control and beyond the reach of his creditors while in the hands of the trustee, may be created and will be sustained by the courts." *Hopkinson v. Swaim,* 284 Ill. 11, 22, 119 N.E. 985, 988 (1918). A trust so conceived is a "spendthrift trust":

A spendthrift trust is created with a view of providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity. Directions against alienation by the voluntary act of the beneficiary or through legal process by creditors are the usual incidents of such trusts.

*Geiger v. Geer,* 395 Ill. 367, 376, 69 N.E.2d 848, 853 (1946), quoting from *O'Hare v.*

*Johnston,* 273 Ill. 458, 113 N.E. 127, 131. Directions against alienation by the voluntary act of the beneficiary are a "usual incident" of a spendthrift trust, *id.,* but, through express direction or otherwise, the trust must prohibit alienation by voluntary act of the beneficiary. The enforceability of a restriction against alienation through legal process by creditors is contingent on the trust's prohibiting alienation by voluntary act of the beneficiary: "There could be no exemption for liability for debt if the beneficiary could convey or assign the income, for if she could do so it could also be seized in execution or attachment or reached by a creditors' bill." *Hopkinson v. Swaim,* 284 Ill. at 23, 119 N.E. at 989.

Accordingly, federal courts applying Illinois law have consistently held that "to qualify as a spendthrift trust, the beneficiary thereof must show that he or she cannot alienate his or her interest therein and that he or she does not possess exclusive and effective control over distribution or termination of the trust. Of particular interest is the extent of the dominion and control which the beneficiary exercises over the plan's assets." *Christison v. Slane (In re Silldorff),* 96 B.R. 859, 864 (C.D.Ill.1989). See also *In re Perkins,* 902 F.2d 1254, 1257 n. 2 (7th Cir.1990); *In re Groves,* 120 B.R. 956 (Bankr.N.D.Ill.1990) (ability of debtor to compel distribution of trust corpus at any time is contrary to nature of spendthrift trust); *In re Peterson,* 88 B.R. 5, 7 (Bankr.D.Me.1988) (the debtor must show that he cannot alienate his interest in a profit-sharing plan trust, and that he does not possess exclusive and effective control over distribution; court must consider the overall nature of the plan, particularly looking at the extent of dominion and control which the debtor has over the plan's assets); *In re Strehlow,* 84 B.R. 241, 244 (Bankr.S.D.Fla.1988) (trust beneficiary who was also one of trust's two co-trustees exercised sufficient control over trust assets that trust did not qualify as "spendthrift trust" under Illinois law); *In re Dagnall,* 78 B.R. 531, 534 (Bankr.

C.D.Ill.1987) (debtor must show that she cannot alienate her interest in the trust res and that she does not possess exclusive and effective control over distribution or termination).

■ In this instance, the Trust gives the Debtor a general power of appointment. In Illinois as elsewhere,

[a] power of appointment is defined as an authority (as distinguished from a duty) conferred upon another (donee) by deed or will to appoint or nominate a person or persons (appointee) to receive and enjoy an estate or an income therefrom or from a fund. (Black's Law Dictionary 1054 (5th ed.1979); Simes & Smith, The Law of Future Interests sec. 871, at 345, (2d ed.1956); *In re Estate of Schaaf* (1974), 19 Ill.App.3d 662, 312 N.E.2d 348.) When a power gives the donee the right to choose anyone to enjoy the property, including the donee, a general power of appointment is created.

*In re Estate of Reiman*, 115 Ill.App.3d 879, 882, 71 Ill.Dec. 240, 242, 450 N.E.2d 928, 930 (1983). The Trust authorizes the Debtor at any time to appoint "all or any part of the trust estate" to any person or entity, including herself. This power is given her as beneficiary, not as trustee, and therefore not in trust. She may exercise it in her sole discretion, for any purpose she chooses. And this power is not subject to the restrictions of the spendthrift provision.

By virtue of his having given the beneficiaries this general power of appointment, it is clear that Michael Gilroy, the settlor of the Trust, did not intend to create a true spendthrift trust. Rather, he intended to restrict the access of creditors to the *res* without also restricting the beneficiaries' own access to it. In view of the plenary power that the general power of appointment affords the Debtor, as beneficiary, over the corpus of her subtrust, the Supreme Court of Illinois would surely deem the spendthrift clause invalid and unenforceable.

■ The Debtor makes two counterarguments, but both are unavailing. She first argues that, under Illinois law, she can disclaim her power of appointment, and her disclaimer would relate back to the date of the Trust's creation. But, whether this argument is valid or not, it is irrelevant because she did not disclaim the power of appointment prepetition—she does not contend otherwise—and she cannot disclaim it postpetition. Upon the filing of her bankruptcy petition, the power of appointment became an asset of the bankruptcy estate[2]; therefore, only the Chapter 7 Trustee can disclaim it. Second, the Debtor also argues that, under Illinois law, as set forth in the case of *In re Breault's Estate*, 63 Ill.App.2d 246, 265–266, 211 N.E.2d 424 (1965), quoting from *Gilman v. Bell*, 99 Ill. 144, (1881), a creditor cannot compel the exercise of a power of appointment.[3] This argument too is

**2.** *In re Shurley*, 171 B.R. 769, 787 (Bankr. W.D.Tex.1994) (because a general power of appointment can be exercised for the benefit of the donee herself, it is included in the donee's bankruptcy estate), *rev'd on other grounds*, 115 F.3d 333 (5th Cir.1997); 11 U.S.C. § 541(b)(1) ("Property of the estate does not include any power that the debtor may exercise *solely* for the benefit of an entity other than the debtor." (emphasis added)); 5 Lawrence P. King et al., Collier on Bankruptcy, ¶ 541.19 (15th ed. 1998) ("Section 541(b)(1) excludes from the estate any power that the debtor may exercise 'solely for the benefit of an entity other than the debtor.' This indicates that if the power in question may be exercised for the benefit of another

entity, but is capable of conferring benefit on the debtor also, it becomes property of the estate.").

**3.** The case that the Debtor relies on holds that "it is the rule in this state that where a person has a general power of appointment, and exercises that power, the property appointed is deemed, in equity, part of his assets, so far as his creditors are concerned, and subject to their demands, if his estate is inadequate, in preference to the claims of his voluntary appointees." *In re Breault's Estate*, 63 Ill. App.2d 246, 265–266, 211 N.E.2d 424 (1965). However, it also reconciles this holding with older Illinois precedent, found in *Gilman v.*

irrelevant. The spendthrift trust is invalid under Illinois law because the power of appointment affords the *beneficiary* (the Debtor) unrestricted access to the corpus; even if her creditors cannot compel her to use it for their benefit (I need make no ruling on that issue), she herself can freely invade the Trust, and her unfettered control is dispositive on the issue. The Court therefore concludes that the Trust's spendthrift provision is invalid and unenforceable under Illinois law. It does not prevent the Debtor's beneficial interest in the Trust and her rights to the Trust corpus from becoming assets of her estate.[4]

Moreover, even if the spendthrift restriction were deemed valid, the Debtor's victory would be pyrrhic because, by its own terms, the spendthrift provision does not shelter the general power of appointment. The power of appointment is itself an asset of the estate; it is not a beneficial interest in a trust, so it cannot be subject to a restriction that, pursuant to § 541(c)(2), might keep it from the estate: § 541(c)(2) applies only to beneficial interests in trusts. And even if Illinois law prevents a *creditor* from compelling the exercise of a general power of appointment, that restriction would not prevent the holder of the power from transferring it herself. By virtue of her bankruptcy filing, she herself transferred the general power of appointment to the bankruptcy estate. No creditor process was necessary to bring this asset into the estate. Moreover, any restriction in Illinois law that either prevented a creditor from compelling the exercise of a general power of appointment or that prevented the donee from transferring that power would, by

*Bell,* 99 Ill. 144 (1881), to the effect that a court of equity cannot compel the donee of a power of appointment to accept the property or fund against his will, even for the benefit of creditors.

4. Accordingly, I need not consider the Trustee's alternative argument that the spendthrift provision is invalid because of the control that the Debtor exercises over the trust corpus in her capacity as its sole trustee.

virtue of 11 U.S.C. § 541(c)(1)(A), be ineffective.[5] The general power of appointment, and all the Debtor's rights thereunder, would become assets of the estate notwithstanding any such restriction.

### b. *Rights Acquired Postpetition*

The Debtor next contends that if her beneficial interest in the subtrust is not excluded from the bankruptcy estate, the estate nonetheless acquired only the value of the property in trust on the date of the bankruptcy filing, not the enhancement in value that occurred postpetition, by virtue of the Trust's postpetition inheritance of her father's right to the lottery proceeds. In response, the Trustee contends that the Debtor's right to the lottery proceeds is included in the estate by operation of § 541(a)(5)(A), which brings into the estate those interests in property that the Debtor acquires, or becomes entitled to acquire, within 180 days after the bankruptcy filing by bequest, devise, or inheritance. The Debtor does not answer the Trustee's argument for inclusion under § 541(a)(5)(A).

█ The Trustee has the better of this argument. Section 541(a)(5)(A) of the Bankruptcy Code states that the estate includes

(5) [a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance.

5. Section 541(c)(1)(A) provides:

Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
(A) that restricts or conditions transfer of such interest by the debtor.

11 U.S.C. § 541(a)(5)(A). The Debtor does not dispute that her father's interest in the lottery proceeds passed by bequest to the Trust within 180 days after she filed her bankruptcy petition, or that her rights, through the Trust, in the lottery proceeds, became fixed and irrevocable during that same period. And, because the Debtor's interest in the Trust became an asset of the bankruptcy estate through § 541(a)(1), it follows that her interest through the Trust in the bequeathed lottery winnings would have been property of the estate if it had been an asset of the Debtor, or of the Trust, on the date of the filing of the petition. Therefore, I conclude that the Debtor's interest through the Trust in the bequeathed lottery winnings became property of the estate by operation of § 541(a)(5)(A), and that the Chapter 7 Trustee is entitled to judgment as a matter of law. Judgment shall enter accordingly.